IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**PAMELA MCNAIRY**                                                                           **PLAINTIFF**

**V.**                                       **CIVIL ACTION NO. 1:09-CV-59-SA-JAD**

**CHICKASAW COUNTY, MISSISSIPPI,**
**d/b/a SHEARER-RICHARDSON MEMORIAL**
**NURSING HOME**                                                       **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment [36]. For the reasons stated below, the motion is granted.

## I. BACKGROUND

Plaintiff, a black woman, was hired in May 2006, as a licensed practical nurse (LPN) at Shearer-Richardson Memorial Nursing Home. She initially earned $12.50 per hour. However, on July 26, 2006, Plaintiff received a raise to $15.00 per hour, made retroactive to July 17, 2006.

On August 1, 2006, Defendant increased the rate of pay for newly hired LPN's to $20.00 per hour. Defendant alleges that the pay increase was designed to attract new hires. As a result, existing LPN's were omitted from the raise and continued to receive a lesser amount in pay.

In May 2007, Plaintiff came to believe that white nurses were being paid more than black nurses. After speaking with some of her co-workers, Plaintiff asked Judy Dunn, the director of nurses, why black nurses were paid less than white nurses. Defendant subsequently equalized the pay for all LPN's at the newer rate of $20.00 per hour. All nurses who were hired prior to the 2006 pay raise for newly-hired nurses - and were thus excluded from it - also received back pay retroactive to August 1, 2006. Accordingly, on May 18, 2007, Plaintiff received a raise to $20.00 per hour and a lump-sum payment of $4,654.00.

Plaintiff filed a charge of discrimination with the EEOC on April 21, 2008, and an amended charge of discrimination on May 21, 2008. After receiving her right-to-sue letter, Plaintiff filed a Complaint in this Court, citing causes of action under Title VII and 42 U.S.C. § 1981. Plaintiff alleged in her Complaint that Defendant discriminated against her by paying her less than white nurses. Plaintiff also alleged that Defendant retaliated against her by reducing her hours and denying her a position as a treatment nurse.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT&T Corp., 314 F. App'x 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows that there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a

genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

### III. TITLE VII

*A.    Wage Discrimination*

Plaintiff alleges that Defendant discriminated against her by paying her lower wages than white nurses who were similarly situated. It is undisputed that Defendant equalized the wages earned by all LPN's on May 18, 2007, and paid Plaintiff $4,654.00 in back pay to account for the discrepancy. It is also undisputed that Plaintiff became aware of the disparity prior to May 18, 2007. Therefore, to the extent that any discriminatory pay disparity existed, May 18, 2007, was the date that it ended and the latest date upon which Plaintiff could have become aware of it.

Before a plaintiff may pursue a cause of action under Title VII, she must exhaust her administrative remedies. Hall v. Cont'l Airlines, Inc., 252 F. App'x 650, 653 (5th Cir. 2007). Exhaustion occurs when an individual files a timely charge of discrimination with the EEOC, the charge is dismissed by the EEOC, and the EEOC informs the individual of the right to sue. Id. An EEOC charge is timely if it was filed "within 180 days of the alleged unlawful employment practice." Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009); see also Hartz v. Administrators fo the Tulan Educ. Fund, 275 F. App'x 281, 287 (5th Cir. 2008); Hernandez v. Hill Country Tel. Cooperative, Inc., 849 F.2d 139, 142 (5th Cir. 1988). "Under established federal law, the 180-day limitations period for Title VII claims . . . begins to accrue when the plaintiff knows or

3

reasonably should know that the discriminatory act has occurred." Merrill v. Southern Methodist Univ., 806 F.2d 600, 605 (5th Cir. 1986) (quoting Cervantes v. Imco Halliburton Servs., 724 F.2d 511, 513 (5th Cir. 1984)).

It is undisputed that Plaintiff became aware of the alleged pay disparity at least by May 18, 2007, the date on which Defendant equalized the pay of all LPN's. Therefore, in order to pursue a Title VII claim based on the alleged disparity, Plaintiff must have filed her charge of discrimination at least by November 14, 2007 - 180 days after May 18, 2007. Plaintiff alleges that she filed a charge of discrimination with the EEOC on April 21, 2008.[1] Accordingly, Plaintiff's Title VII wage discrimination claim is time-barred.

*B.     Retaliation*

Plaintiff claims that Defendant retaliated against her complaints concerning pay disparity and her filing of an EEOC charge in a variety of manners. As a threshold matter, the Court must clarify the proper analytical framework for this case. Defendant briefed the present motion as if this were a "pretext" case, while Plaintiff briefed it as if it were a "mixed-motive" case.

"Under Title VII, a plaintiff can prove a claim of intentional discrimination or retaliation by either direct or circumstantial evidence." Staten v. New Palace Casino, LLC, 187 F. App'x 350, 357 (5th Cir. 2006). If a plaintiff employs circumstantial evidence, the Court uses the McDonnell Douglas burden-shifting framework. Id. Under the McDonnell Douglas framework, the plaintiff has the initial burden to establish a prima facie case of retaliation. Id. To establish a prima facie

---

[1] The record contains no evidence beyond Plaintiff's assertions in her briefing that she filed a charge of discrimination with the EEOC on April 21, 2008. The record does contain a copy of her amended charge of discrimination filed on May 18, 2008. However, the Court shall assume, for the purpose of determining whether Plaintiff's Title VII pay disparity claim is time-barred, that Plaintiff filed a charge of discrimination on April 21, 2008.

4

case of retaliation under Title VII, a plaintiff must establish that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). When making a prima facie showing, the plaintiff may rely on close timing between her protected activity and the adverse employment action to show causation. McCullough v. Houston County, 297 F. App'x 282, 288 (5th Cir. 2008) (citing Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997)).

If the plaintiff makes a prima facie showing, the burden shifts back to the defendant to "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." McCoy, 492 F.3d at 556-57. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." Id. If the employer produces a legitimate reason for the action taken, "any presumption of discrimination raised by the plaintiff's prima facie case vanishes." McCullough, 297 F. App'x at 288 (citing Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005)).

It is at this point that the parties' analyses diverge. Plaintiff argues that the Court should employ the modified McDonnell Douglas analysis applicable to "mixed-motive" cases. She contends that she must only create a genuine issue of fact that Defendant's purported reason for the reduction in hours, while true, is only one of the reasons for its conduct, and another motivating factor is her protected activity. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 101, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). In contrast, Defendant argues that the Court should employ the "pretext" analysis, in which Plaintiff must create a genuine issue of fact that Defendant's purported reason for the reduction in hours is

5

not true, but is instead a pretext for discrimination. See Staten, 187 F. App'x at 357.

At one time, the Fifth Circuit Court of Appeals required plaintiffs to present direct evidence of discrimination in order to receive the benefit of the mixed-motives analysis. Fabella v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414-15 (5th Cir. 2003). However, the United States Supreme Court held that a plaintiff does not have to present direct evidence of discrimination to employ the mixed-motives analysis in a Title VII discrimination case. Desert Palace, Inc., 539 U.S. at 101, 123 S. Ct. 2148. While the the Fifth Circuit has extended the reasoning from Desert Palace to ADEA discrimination claims, it has expressly declined to extend it to Title VII retaliation claims. Compare Rachid, 376 F.3d at 312, to Staten, 187 F. App'x at 362; Septimus, 399 F.3d at 607 n.7. Accordingly, in order to apply a mixed-motives analysis to a Title VII retaliation claim, a plaintiff must present direct evidence that a retaliatory motive prompted the adverse employment action of which she complains. Fabella, 329 F.3d at 414-15. Plaintiff has presented no such direct evidence. Therefore, the Court will not apply the mixed-motives analysis. Rather, the Court must apply the pretext analysis.

In the pretext analysis, after the defendant has produced a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove that "the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." McCoy, 492 F.3d at 557. The plaintiff must show that "the adverse employment action taken against the plaintiff would not have occurred 'but for' [the] protected conduct." McCullough, 297 F. App'x at 288 (citing Septimus, 399 F.3d at 608)). Mere temporal proximity is not sufficient to establish "but for" causation in this final stage of the

analysis. Id. at 288-89 (citing Strong v. Univ. Healthcare Sys., 482 F.3d 802, 808 (5th Cir. 2007)).

Plaintiff argues that she has presented two retaliation claims: one premised upon her complaints of disparate pay, and one premised upon her filing of an EEOC charge. However, Plaintiff's retaliation claims are properly separated by reference to the alleged retaliatory acts, rather than by reference to the protected activities. See Staten, 187 F. App'x at 359.

*1. Reduced Hours*

Plaintiff first claims that Defendant reduced her hours after she complained that blacks were being paid less than whites and filed a charge of discrimination with the EEOC. The Court will assume, for purposes of addressing this motion, that Plaintiff has carried her initial burden and made out a prima facie case of retaliation. Defendant responds that any reduction in hours suffered by Plaintiff was due to Shearer-Richardson's change from eight-hour shifts to ten-hour shifts, a move that reduced the number of PRN (as needed) staff needed to cover all available shifts.

The record shows that Plaintiff complained to her superior in May 2007, and filed her amended charge of discrimination on May 18, 2008. A July 25, 2007, memorandum from Judy Dunn, the director of nursing, stated that all shifts were going to change from eight hours to ten hours within six months, which would result in decreased overtime. The compilation of Plaintiff's work hours provided by Defendants shows that the ten-hour shifts began during the pay period ending on September 8, 2007. According to Dunn, the purpose of the change to ten-hour shifts was the reduction of the number of PRN staff necessary to cover all available shifts. Plaintiff does not dispute that Defendant switched from eight-hour shifts to ten-hour shifts, nor does she dispute that her reduction in hours coincided with the change in shift scheduling.

Plaintiff argues that Defendant's purported reason for her reduced hours - the change from

eight-hour shifts to ten-hour shifts - is mere pretext for discrimination. Plaintiff cites the temporal proximity of Plaintiff's final day of work for Shearer-Richardson (January 22, 2009) to her receipt of a "Right to Sue" letter from the EEOC (January 8, 2009) as evidence of pretext. However, temporal proximity is not sufficient to carry a plaintiff's pretext burden. <u>McCullough</u>, 297 F. App'x at 288-89. Further, the alleged retaliatory action began prior to Plaintiff's receipt of the right-to-sue letter.

Plaintiff also alleges that Dunn testified that she would not rehire Plaintiff now because of this lawsuit. The record contains the following relevant portion of Dunn's deposition:

    A.    Mostly due to this situation.

    Q.    You mean her filing the charge and then the subsequent lawsuit against your--

    A.    That's correct. I don't think the work environment would be good for the facility. I don't think it would be good for the facility.

    Q.    Are there any other reasons?

    A.    No.

The portion of the transcript provided by Plaintiff does not include the initial question asked of Dunn. Consequently, this fragment of testimony is inconclusive at best. While Plaintiff alleges in her briefing that counsel asked Dunn whether she would now rehire Plaintiff, the record contains no evidence of such a question. <u>See</u> FED. R. EVID. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading.."); <u>McAlpine v. Porsche Cars N. Am. Inc.</u>, 2010 U.S. App. LEXIS 11240, *7-*8 (5th Cir. June 2, 1010) (statements made in a responsive pleading to a motion for summary judgment

can not establish a genuine issue of fact).

Therefore, Plaintiff's allegation that Dunn asserted that she would not now rehire Plaintiff is not sufficient evidence to show that "the adverse employment action would not have occurred 'but for' the protected conduct." Reine v. Honeywell Int'l Inc., 2010 U.S. App. LEXIS 1396, *7 (5th Cir. Jan. 21, 2010) (citing Septimus, 399 F.3d at 608). Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim for the reduction of Plaintiff's work hours.

*2.     Treatment Nurse Position*

Plaintiff also contends that Defendant retaliated against her by denying her a position as a "treatment nurse" in which she would treat the wounds of residents. Defendant argues that the alleged denial of the "treatment nurse" position was not an adverse employment action.

Dunn testified that "treatment nurse" was not a distinct position which enjoyed different compensation than other LPN positions. Rather, it was just a period of time during which one or two LPN's performed a specific set of duties relating to the treatment of wounds. LPN's were not paid any more during this time, and Dunn stated that, in her opinion, the duties were not a promotion. She testified that any nurse on staff was able to do wound treatments, and it was not something that just one nurse did. At one point, Dunn had set a specific time period each day for wound treatments because of the volume of such wounds. However, in a memorandum on July 25, 2007, Dunn informed the nursing home's staff that the "treatment nurse" position was going to be eliminated, as other staff had time to perform their own wound treatments in addition to their medications and assessments.

In her deposition, Plaintiff testified that she performed the wound treatment duties along with

9

another coworker, but that Dunn eliminated the position for a period of time because there were fewer wound treatments required. Plaintiff testified that she initially did not want to do wound treatments, but that she eventually began to enjoy it. She admitted that the position did not involve more pay, and that the hours were the same as her normal duties. Plaintiff also admitted that the position was eliminated in its entirety with nurses doing wound treatments for their own patients, rather than having a specific treatment nurse position, and that the number of wounds in the facility decreased during the period of time she filled that role. However, Plaintiff testified that several months after she was removed from wound treatment duties she learned that Defendant reinstated the position and assigned a white nurse to it.

"[F]or purposes of a Title VII retaliation claim, an adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of retaliation." DePree v. Saunders, 588 F.3d 282, 288 (5th Cir. 2009) (quoting Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)); see also McCoy, 492 F.3d at 559. The fact that the wound treatment duties involved no difference in pay is not dispositive. McCoy, 492 F.3d at 560 (the mere fact that plaintiff was placed on paid administrative leave did not necessarily mean that she had not suffered an adverse employment action). When determining whether an alleged retaliatory action constitutes an adverse employment action, the Fifth Circuit Court of Appeals has emphasized the potential for stigma, suspicion of wrongdoing, and possible emotional distress that may come with the alleged action. Id. at 560-61. Indeed, the United States Supreme Court has emphasized the importance of context when determining whether a particular act constitutes an adverse employment action for purposes of a

Title VII retaliation claim. Burlington N. & Santa Fe Ry., 548 U.S. at 69, 126 S. Ct. 2405. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the" alleged employment action. Id., 126 S. Ct. 2405 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81-82, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).

In the present case, Plaintiff has not presented any evidence of stigma, suspicion, emotional distress, or negative social impact attached to Defendant's elimination of the treatment nurse duties. It is undisputed that the wound treatment duties entailed the same compensation and hours as Plaintiff normally enjoyed.[2] Plaintiff's testimony indicates that she desired to continue treating wounds. However, a plaintiff's subjective feelings are less important than whether the actions taken by the employer would have dissuaded an objectively reasonable employee from making a charge of discrimination. Id. at 68-69, 118 S. Ct. 998. Plaintiff has not presented any evidence to indicate that the Defendant's elimination of treatment nurse duties was anything more than the sort of "trivial conduct" the Burlington Northern standard was meant to filter out. See Id. at 70, 118 S. Ct. 998. Accordingly, it was not an adverse employment action in the context of a Title VII retaliation claim, and the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Title VII retaliation claim stemming from the elimination of the treatment nurse position.

   3.   *Miscellaneous Allegations*

Plaintiff also testified at her deposition that she believes Defendant retaliated against her by 1) not allowing her to modify her work schedule to accommodate her personal schedule; 2) writing

---

[2] Plaintiff alleged in her Complaint that the treatment nurse duties were accompanied by extended working hours, but she specifically testified at deposition that the wound treatment duties did not entail more hours than she worked otherwise.

her up for neglecting to observe a resident take medication; 3) not allowing her to have a slice of cheese on her scrambled eggs; 4) not permitting her to take a day off to celebrate her son's completion of chemotherapy; 5) giving her an unexcused absence when she had a dentist appointment; 6) screening her personal calls; and 7) not allowing another employee to bring Plaintiff her paycheck.

Plaintiffs are required to file a charge of discrimination with the EEOC to put their employer on notice of the existence and nature of the charges against it. Manning v. Chevron Chem. Co., 332 F.3d 874, 879-80 (5th Cir. 2003). For that reason, Title VII causes of action are limited to "the scope of the EEOC investigation which could reasonably grow out of the administrative charge." Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993).

Plaintiff's amended charge of discrimination includes no mention of the miscellaneous allegations of retaliation listed above. Looking "slightly beyond [the charge's] four corners, to its substance rather than its label," the Court does not believe that an EEOC investigation into the miscellaneous allegations of retaliation listed above could "reasonably be expected to grow out of the charge of discrimination." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006). Therefore, any Title VII cause of action stemming from such allegations is barred. Hall, 252 F. App'x at 653. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to any Title VII retaliation claim asserted by Plaintiff stemming from the miscellaneous allegations listed above.[3]

---

[3]The Court further notes that Plaintiff's Complaint contains no allegations concerning any of the above-cited examples of retaliatory conduct. "A plaintiff may not rely on new claims raised for the first time in a response . . . to a motion for summary judgment." Jefferson v. Christus St. Joseph Hosp., 2010 U.S. App. LEXIS 5179, *21 (5th Cir. Mar. 11, 2010) (citing Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court.")). Therefore, these miscellaneous

*4. Termination/Constructive Discharge*

Plaintiff briefly argues that Defendant reduced her hours to such a degree that she was essentially terminated. Plaintiff claims that Defendant did so in retaliation for her complaints regarding the alleged disparity between black nurses' pay and white nurses' pay and/or her filing of a charge of discrimination with the EEOC. Plaintiff essentially argues that she was constructively discharged.

However, Plaintiff's Complaint contains no allegations concerning termination and/or constructive discharge. "A plaintiff may not rely on new claims raised for the first time in a response . . . to a motion for summary judgment." Jefferson, 2010 U.S. App. LEXIS 5179 at *21 (citing Cutrera, 429 F.3d at 113). Therefore, any retaliation claim premised upon Plaintiff's alleged termination is not properly before the Court.

## IV. SECTION 1981

"[T]he remedies available under Title VII are coextensive with those of § 1981[,] and . . . the two procedures augment each other and are not mutually exclusive." Hernandez, 849 F.2d at 143 (citing Johnson v. Railway Express Agency, 421 U.S. 454, 459, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975)) (punctuation omitted). However, a plaintiff is not required to raise Section 1981 claims with the EEOC before filing a complaint. McKinney, 341 F. App'x at 81. Section 1981 claims are analyzed under the same burden-shifting framework as Title VII claims. Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316 (5th Cir. 2004); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002).

---

retaliation claims are not properly before the Court.

## A. *Wage Discrimination*

Plaintiff alleges that Defendant discriminated against her by paying her lower wages than white nurses who were similarly situated. "To make out a *prima facie* case of discrimination in compensation, a plaintiff must show that [she] was a member of a protected class and that [she] was paid less than a non-member for work requiring substantially the same responsibility." Taylor v. UPS, Inc., 554 F.3d 510, 522 (5th Cir. 2008) (citing Uviedo v. Steves Sash & Door Co., 738 F.2d 1425, 1431 (5th Cir. 1984)); see also Johnson v. TCB Const. Co., Inc., 334 F. App'x 666, 670 (5th Cir. 2009); Runnells v. Tex. Children's Hosp. Select Plan, 167 F. App'x 377, 384 (5th Cir. 2006). A plaintiff may not rely on general statistical evidence, but, rather, she must present evidence that her pay was lower than specific employees who are not members of the protected class. Taylor, 554 F.3d at 523. The comparison must be to a "person who is or was similarly situated." Jones v. Flagship Int'l, 793 F.2d 714, 723 (5th Cir. 1986). The Court will assume, for purposes of addressing the present motion, that Plaintiff has made out a prima facie case of discrimination in compensation.

If a plaintiff establishes a prima facie case of wage discrimination, the employer can respond with evidence that the disparate wage payments were "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than [race]." Plemer v. Parsons Gilbane, 713 F.2d 1127, 1136 (5th Cir. 1983); see also Browning v. Southwest Research Inst., 288 F. App'x 170, 174 (5th Cir. 2008). "Factors other than [race] include, among other things, employees' different job levels, different skill levels, previous training, and experience." Browning, 288 F. App'x at 174 (quotation omitted). If the employer provides legitimate, non-discriminatory reasons for the alleged pay disparity, the plaintiff must show that the purported reason is a pretext for discrimination. Id.

14

(citing Plemer, 713 F.2d at 1137 n. 8).

Defendant claims that it raised the starting wages for new LPN hires to $20.00 per hour in July 2006, in order to facilitate hiring of new staff. Defendant further claims that all existing LPN's - without regard to their race - were inadvertently omitted from the pay raise and continued to be paid lower amounts, while all LPN's hired after July 2006, received the new starting pay of $20.00 per hour. Plaintiff argues that Defendant's explanation is mere pretext for discrimination.

When Plaintiff was hired in May 2006, she earned $12.50 per hour. On July 26, 2006, she received a raise to $15.00 per hour, made retroactive to July 17, 2006. Plaintiff testified that she came to believe that there was a disparity between her wages and those of white LPN's in May 2007, and that she complained to her superiors. Subsequently, Defendant equalized the wages earned by all LPN's on May 18, 2007, and paid Plaintiff $4,654.00 in back pay to account for the discrepancy.

Deborah Mooneyham, a white LPN, was hired on July 25, 2006, at a wage of $20.00 per hour. On July 26, 2006, several LPN's received a pay raise to $15.00 per hour: Trena McCoy, Jennifer Ezell, Sheila Coleman, Cynthia McPherson, Cynthia Barton, Shirley Conway, and Plaintiff. Ezell, Coleman, McPherson, and Plaintiff were black. The record does not reflect the race of the remaining nurses. However, Dunn testified during her deposition that the list of nurses who received a raise to $15.00 per hour on July 26, 2006, included a mix of different races.

Plaintiff has not presented any evidence to dispute Defendant's explanation for the pay disparity. Nonetheless, Plaintiff argues that Defendant's explanation is mere pretext for discrimination. Plaintiff contrasts Mooneyham's hiring on July 25, 2006 - at $20.00 per hour - with Plaintiff's raise to $15.00 per hour on July 26, 2006. However, Defendant has presented unrebutted testimony from its director of nursing that nurses of different races were included in those who

15

received a raise to $15.00 per hour on July 26, 2006. Accordingly, Plaintiff has not presented evidence rebutting Defendant's nondiscriminatory reason for the pay disparity and has not carried her pretext burden. The Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Section 1981 wage discrimination claim.

### B. *Retaliation*

To establish a prima facie case of retaliation under Section 1981, a plaintiff must establish the same elements as in a Title VII retaliation case. Compare McKinney, 341 F. App'x at 83, with McCoy, 492 F.3d at 556-57; see also Davis, 383 F.3d at 319.

*1. Reduced Hours, Treatment Nurse Position*

For the same reasons stated in the Court's analysis of Plaintiff's Title VII claims, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's Section 1981 claims stemming from Defendant's reduction of Plaintiff's hours and elimination of the treatment nurse duties.

*2. Miscellaneous Retaliatory Actions*

Plaintiff also testified at her deposition that she believes Defendant retaliated against her by 1) not allowing her to modify her work schedule to accommodate her personal schedule; 2) writing her up for neglecting to observe a resident take medication; 3) not allowing her to have a slice of cheese on her scrambled eggs; 4) not permitting her to take a day off to celebrate her son's completion of chemotherapy; 5) giving her an unexcused absence when she had a dentist appointment; 6) screening her personal calls; and 7) not allowing another employee to bring Plaintiff her paycheck.

However, Plaintiff's Complaint contains no allegations concerning any of the above alleged retaliatory actions. "A plaintiff may not rely on new claims raised for the first time in a response

. . . to a motion for summary judgment." Jefferson, 2010 U.S. App. LEXIS 5179 at *21 (citing Cutrera, 429 F.3d at 113). Therefore, any Section 1981 retaliation claim premised upon the above-cited miscellaneous actions is not properly before the Court.

   3.   *Termination/Constructive Discharge*

For the same reasons stated in the Court's Title VII analysis, the Court holds that any Section 1981 retaliation claim brought by Plaintiff premised upon her alleged termination or constructive discharge is not properly before the Court.

## V. CONCLUSION

For the reasons cited above, the Court grants Defendant's Motion for Summary Judgment. Accordingly, this case is closed. An order consistent with this opinion will issue on this, the 14th day of July, 2010.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**