# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**PAMELA MCNAIRY**                                                                                    **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 1:09-CV-59-SA-JAD**

**CHICKASAW COUNTY, MISSISSIPPI,**
**d/b/a SHEARER-RICHARDSON MEMORIAL**
**NURSING HOME**                                                    **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is Plaintiff's Motion to Alter or Amend Judgment [45]. For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff, a black woman, was hired in May 2006, as a licensed practical nurse (LPN) at Shearer-Richardson Memorial Nursing Home. She initially earned $12.50 per hour. However, on July 26, 2006, Plaintiff received a raise to $15.00 per hour, made retroactive to July 17, 2006.

On August 1, 2006, Defendant increased the rate of pay for newly hired LPN's to $20.00 per hour. Defendant alleges that the pay increase was designed to attract new hires. As a result, existing LPN's were omitted from the raise and continued to receive a lesser amount in pay.

In May 2007, Plaintiff came to believe that white nurses were being paid more than black nurses. After speaking with some of her co-workers, Plaintiff asked Judy Dunn, the director of nurses, why black nurses were paid less than white nurses. Defendant subsequently equalized the pay for all LPN's at the newer rate of $20.00 per hour. All nurses who were hired prior to the 2006 pay raise for newly-hired nurses - and were thus excluded from it - also received back pay retroactive to August 1, 2006. Accordingly, on May 18, 2007, Plaintiff received a raise to $20.00 per hour and a lump-sum payment of $4,654.00.

Plaintiff filed a charge of discrimination with the EEOC on April 21, 2008, and an amended charge of discrimination on May 21, 2008. After receiving her right-to-sue letter, Plaintiff filed a Complaint in this Court, citing causes of action under Title VII and 42 U.S.C. § 1981. Plaintiff alleged in her Complaint that Defendant discriminated against her by paying her less than white nurses. Plaintiff also alleged that Defendant retaliated against her by reducing her hours and denying her a position as a treatment nurse.

On January 29, 2010, Defendant filed its Motion for Summary Judgment, which the Court granted on July 14, 2010. See McNairy v. Chickasaw County, 2010 U.S. Dist. LEXIS 70833 (N.D. Miss. July 14, 2010). The Court first held that Plaintiff's Title VII claim for wage discrimination was time-barred, as she failed to file a charge of discrimination with the EEOC within 180 days of the date she became aware of the alleged discriminatory practice. Id. at *6.

The Court then addressed Plaintiff's Title VII retaliation claims. Id. at *6-*21. First, the Court held that Plaintiff was not permitted the benefit of a mixed-motives analysis because she had not presented any direct evidence of retaliatory motive. Id. at *10. The Court then found that Plaintiff had not presented sufficient evidence that her hours would have been reduced but for her protected conduct. Id. at *14. Next, the Court held that Plaintiff had failed to show that Defendant's denial of "treatment nurse" duties constituted an adverse employment action. Id. at *18. The Court also held that Plaintiff was barred from asserting Title VII causes of action for several miscellaneous allegations, as Plaintiff failed to include them in her charge of discrimination. Id. at *19. Finally, the Court held that any Title VII retaliation claim for termination and/or constructive discharge was not properly before the Court. Id. at *21.

With respect to Plaintiff's Section 1981 causes of action, the Court first held that Plaintiff

had presented no evidence to dispute Defendant's legitimate, nondiscriminatory reason for an alleged pay disparity between white nurses and black nurses. Id. at *24. The Court then granted summary judgment as to Plaintiff's Section 1981 retaliation claims for the same reasons stated in its analysis of Plaintiff's corresponding Title VII claims. Id. at *25-*26. Next, the Court declined to consider any Section 1981 retaliation claim for several miscellaneous actions which Plaintiff believed to be motivated by retaliation, as Plaintiff failed to include such claims in her Complaint. Id. at *26. Finally, the Court held that any Section 1981 retaliation claim for termination and/or constructive discharge was not properly before the Court. Id. at *27.

On July 28, 2010, Plaintiff filed her Motion to Alter or Amend Judgment [45], which the Court now considers.

## II. RULE 59 STANDARD

Plaintiff refers to both Rules 59 and 60 in her Motion to Alter or Amend Judgment. While the scope of Rule 59(e) has been generally described as unrestricted, "Rule 60(b) relief may be invoked . . . only for the causes specifically stated in that rule." Williams v. Thaler, 602 F.3d 291, 303 (5th Cir. 2010). Of course, a litigant must file a 59(e) motion "no later than 28 days after the entry of judgment." FED. R. CIV. P. 59(e). Rule 60(b) "imposes the more forgiving time limit of either 'one year after the entry of judgment ' or 'within a reasonable time.'" Williams, 602 F.3d at 303. "When a litigant files a motion seeking a change in judgment, courts typically determine the appropriate motion based on whether the litigant filed the motion within Rule 59(e)'s time limit." Id. at 303. The Court entered its Order granting Defendant's Motion for Summary Judgment on July 14, 2010 [43]. Plaintiff filed her Motion to Alter or Amend Judgment on July 28, 2010 – less than 28 days after the Court's ruling. Accordingly, the Court shall address the present motion as one filed

3

under Rule 59(e).

"[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and ' cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" Rosenblatt v. United Way of Greater Houston, 607 F.3d 413, 419 (5th Cir. 2010) (alteration original) (quoting Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003)). This Court may grant relief under 59(e) "if an intervening change in controlling law occurs; if new evidence becomes available; or to correct a clear error of law or prevent manifest injustice." McGillivray v. Countrywide Home Loans, Inc., 360 F. App'x 533, 536 (5th Cir. 2010) (quoting In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002)). "A district court has 'considerable discretion in deciding whether to grant or deny a motion to alter a judgment.'" Id. (quoting Hale v. Towney, 45 F.3d 914, 921 (5th Cir. 1995)).

### III. DISCUSSION

Plaintiff requests that the Court reconsider its earlier ruling with respect to Plaintiff's retaliation claims. She asserts three grounds for reconsideration. First, she argues that the Court erroneously decided that she was required to present direct evidence of retaliatory motive in order to utilize a mixed-motive analysis. Second, she argues that the Court failed to consider relevant evidence which was inadvertently excluded from her original motion due to a clerical error. Finally, she argues that the Court erred in ruling that Defendant's failure to assign Plaintiff to treatment nurse duties was not a tangible employment action.

*A.*   *Pretext or Mixed-Motive Analysis*

McDonnell Douglas established a burden-shifting framework for the analysis of Title VII

claims. McDonnell Douglas Corp., 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. 1817; McGarry v. Univ. of Miss. Med. Ctr., 355 F. App'x 853, 857 (5th Cir. 2009). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. McDonnell Douglas Corp., 411 U.S. at 802, 93 S. Ct. 1817; McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." McCoy, 492 F.3d at 557. It is at this point that the "pretext" analysis and the "mixed-motive" analysis diverge.

Under the pretext analysis, if the employer produces a legitimate, nondiscriminatory reason for the employment action, the plaintiff must prove that the "employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." Id.; see also McDonnell Douglas Corp., 411 U.S. at 804, 93 S. Ct. 1817. The plaintiff must show that the adverse employment action taken against the plaintiff would not have occurred "but for" the protected characteristic. Walsdorf v. Bd. of Comm'rs, 857 F.2d 1047, 1052 (5th Cir. 1988). In contrast, the mixed-motive analysis of Price Waterhouse merely requires that a plaintiff prove that the protected characteristic "played a motivating part in an employment decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).

At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the United States Supreme Court held in Desert Palace, Inc. v. Costa, that the text of Title VII allowed for a mixed-motive analysis in

5

discrimination cases. 539 U.S. 90, 98-99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). The Court further held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" Id. at 99, 123 S. Ct. 2148 (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the "mixed motive" analysis whether he has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).

Recently, the Fifth Circuit Court of Appeals applied the reasoning of Desert Palace to Title VII retaliation claims. See Smith, 602 F.3d at 332. Accordingly, the Court erred when it ruled that Plaintiff was required to present direct evidence of discrimination to receive the benefit of a mixed-motive analysis. A Title VII plaintiff - whether asserting discrimination or retaliation claims - may now rebut a defendant's legitimate, nondiscriminatory reason for an adverse employment action by proving that "(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Davis v. Farmers Ins. Exch., 2010 U.S. App. LEXIS 7130, at *5 (5th Cir. Apr. 6, 2010).

**B.** *Title VII Retaliation*

   *1.* *Reduced Hours*

In the Court's first opinion, it assumed that Plaintiff had established a prima facie case of

6

retaliation. See McNairy, 2010 U.S. Dist. LEXIS 70833 at *11. A plaintiff may establish a prima facie case of retaliation under Title VII by showing that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." Smith, 602 F.3d at 326 n. 9 (quoting McCoy, 492 F.3d at 557). Plaintiff engaged in a protected activity, insofar as she opposed what she perceived to be a practice made unlawful under Title VII – a pay disparity between white nurses and black nurses. McGarry, 355 F. App'x at 858. Defendant took an adverse employment action against her by reducing her work hours. See Pegram v. Honeywell, Inc., 361 F.3d 272, 284 (5th Cir. 2004) (employment action that impacts compensation is adverse).

Plaintiff has also presented sufficient evidence of causation to establish a prima facie case. The record shows that she complained of a perceived pay disparity no later than May 18, 2007. Defendant proposed the shift changes which purportedly caused Plaintiff to receive fewer hours on July 25, 2007. Further, Defendant began scheduling Plaintiff for fewer hours in September 2007. "[T]he temporal proximity between a protected action and an adverse employment decision may be sufficient to prove a prima facie case of retaliation." Raborn v. Inpatient Mgmt. Partners, Inc., 352 F. App'x 881, 887 (5th Cir. 2009) (citing Roberson v. Alltel Info. Servs., 373 F.3d 647, 656 (5th Cir. 2004)). Additionally, Plaintiff testified that Judy Dunn called her in for a meeting one day and asked Plaintiff whether she was "going around seeing if [Defendant was] discriminating." Plaintiff testified: "She asked me, 'Did you say that we discriminate,' or something to that effect." Plaintiff told Dunn that she had not said that. At the end of the conversation, Dunn allegedly told Plaintiff "that [she] needed to watch [her] back." This testimony and the sequence of events is sufficient to establish causation in the prima facie analysis.

7

Defendant has produced a legitimate, nondiscriminatory reason for the reduction of Plaintiff's hours. Defendant asserts that it started scheduling its full-time employees for ten-hour shifts, rather than eight-hour shifts, which resulted in fewer hours for PRN staff. This is a legitimate, nondiscriminatory reason. See Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, 312 (5th Cir. 2008) (departmental restructuring is a legitimate, nondiscriminatory reason for an adverse employment action).

In the Court's original opinion, it held that Plaintiff had not presented sufficient evidence to show that Defendant would not have reduced her hours "'but for' the protected conduct." McNairy, 2010 U.S. Dist. LEXIS 70833 at *13 (quoting Reine v. Honeywell Int'l Inc., 362 F. App'x 395, 398 (5th Cir. 2010)). As noted above, the Court should have also evaluated the evidence to determine whether Plaintiff had created a genuine issue of fact as to whether a retaliatory purpose motivated Defendant's reduction of her hours in addition to its legitimate reason. See Davis, 2010 U.S. App. LEXIS 7130 at *5; Smith, 602 F.3d at 332.[1] Upon reconsideration, the Court finds sufficient evidence to create a genuine issue of material fact as to whether retaliation was a motivating factor in the reduction of Plaintiff's hours.

Plaintiff argues that the Court should consider a piece of testimony that it declined to

---

[1]The Court does not imply that it must undertake a mixed-motives analysis regardless of the arguments offered by a Title VII plaintiff. Indeed, a Title VII plaintiff bears the burden of raising a mixed-motives argument at the summary judgment stage. See Magiera v. City of Dallas, 2010 WL 3168211, at *2 (5th Cir. Aug. 11, 2010); Arey v. Watkins, 2010 WL 2764731, at *3 n. 2 (5th Cir. July 14, 2010) (not considering plaintiff's mixed-motives argument because it was not raised in the district court at the summary judgment stage); Brooks v. Lubbock Cnty. Hosp. Dist., 2010 WL 1439109, at *3 (5th Cir. Apr. 12, 2010); Septimus v. Univ. of Houston, 399 F.3d 601, 607 n. 7 (5th Cir. 2005); Vaughner v. Pulito, 804 F.2d 873, 877 n. 2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal."). In the present case, Plaintiff argued a mixed-motives theory, and the Court erroneously declined to consider it.

consider in its initial ruling. The Court declined to consider the following segment of deposition testimony by Judy Dunn, director of nursing:

> A. Mostly due to this situation.
>
> Q. You mean her filing the charge and the subsequent lawsuit against your –
>
> A. That's correct. I don't think the work environment would be good for the facility. I don't think it would be good for the facility.
>
> Q. Are there any other reasons?
>
> A. No.

The above portion of transcript – provided by Plaintiff in her response to Defendant's Motion for Summary Judgment – did not include the initial question asked of Dunn. Consequently, the Court ruled that the above fragment of testimony was inconclusive at best. McNairy, 2010 U.S. Dist. LEXIS 70833 at *13.

Plaintiff attached the full deposition transcript to the present motion. The relevant portion reads as follows:

> Q. Would you recommend Ms. McNairy for rehire? Would you recommend Ms. McNairy for rehire?
>
> A. At our facility?
>
> Q. Yes.
>
> A. No.
>
> Q. Why?
>
> A. Mostly due to this situation.
>
> Q. You mean her filing the charge and the subsequent lawsuit against your –

9

> A. That's correct. I don't think the work environment would be good for the facility. I don't think it would be good for the facility.
>
> Q. Are there any other reasons?
>
> A. No.

Plaintiff argues that this testimony plainly indicates that retaliation motivated the reduction of Plaintiff's work hours. The Court disagrees.

The testimony quoted above reveals nothing about Defendant's motivation in scheduling Plaintiff for fewer hours. At best, it reveals a retaliatory motive in a hypothetical situation in which Plaintiff has applied for a new position at Shearer-Richardson and Defendant has failed to rehire her. However, no such claim is before the Court. Plaintiff would have the Court accept Defendant's response to a hypothetical situation as evidence that retaliatory motive played a part in actual events. The Court declines to do so.

Plaintiff also argues that the "immediate" temporal proximity of events in the present case is sufficient to show a retaliatory intent, citing Swanson v. GSA, 110 F.3d 1180, 1188 (5th Cir. 1997). However, in Swanson the Fifth Circuit Court of Appeals held that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Id. (quoting Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993)). Once an employer has produced a legitimate, nondiscriminatory reason for an adverse employment action, a plaintiff must offer some other evidence that retaliation motivated the action. Id.; see also McDaniel v. Shell Oil Co., 350 F. App'x 924, 927 (5th Cir. 2010) (temporal proximity alone was insufficient to create a genuine issue of material fact as to causation); Raborn, 352 F. App'x at 887 ("While temporal proximity between a

protected action and an adverse employment decision may be sufficient to prove a prima facie case of retaliation, temporal proximity alone is insufficient to rebut an employer's legitimate, non-retaliatory reason."). Therefore, the Court rejects Plaintiff's argument that temporal proximity alone is sufficient to rebut Defendant's legitimate, nondiscriminatory reason for reducing her hours.

However, Plaintiff testified that Dunn called her in for a meeting one day and allegedly asked Plaintiff whether she was "going around seeing if [Defendant was] discriminating." Plaintiff stated: "She asked me, 'Did you say that we discriminate,' or something to that effect." Plaintiff told Dunn that she had not said that. At the end of the conversation, Dunn allegedly told Plaintiff "that [she] needed to watch [her] back." Neither party has drawn the Court's attention to this testimony. Indeed, the Court did not take note of it in its original decision and will not speculate as to whether it would have resulted in a different outcome in the pretext analysis.

Regardless, the above-cited testimony creates a genuine issue of material fact as to whether retaliation was a motivating factor in Defendant's reduction of Plaintiff's hours. Dunn's warning that Plaintiff should "watch her back" plainly implies the possibility of some sort of negative action in the future. This warning immediately followed inquiries as to whether Dunn had accused Defendant of discriminatory practices. Accordingly, the Court holds that Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether retaliation was a motivating factor in Defendant's reduction of Plaintiff's hours. See Fallon v. Potter, 277 F. App'x 422, 428-29 (5th Cir. 2008) (where supervisor implied that plaintiff would be fired and threatened other adverse action if plaintiff continued filing EEOC charges, district court erred in granting summary judgment on retaliation claim). The Court grants Plaintiff's Motion for Reconsideration, insofar as it pertains to her Title VII retaliation claim for the reduction of her work hours.

*2.      Treatment Nurse Position*

In the Court's July 14, 2010 Memorandum Opinion, it separated Plaintiff's retaliation claim into two separate claims: one stemming from Defendant's alleged reduction of her hours, and one stemming from Defendant's failure to assign her to treatment nurse duties. McNairy, 2010 U.S. Dist. LEXIS 70833 at *11. With respect to the treatment nurse claim, the Court held that Defendant's failure to assign Plaintiff to treatment nurse duties was not an adverse employment action. Id. at *18. In the present motion, Plaintiff argues that the Court erred, insofar as Defendant's failure to assign Plaintiff to the treatment nurse duties was a failure to assign Plaintiff work hours.

The undisputed evidence in the record provides that "treatment nurse" was not a specific position that came with greater pay or additional hours. Rather, some LPNs on duty would be assigned to the task of treating patients' wounds. At one time, Plaintiff would typically perform wound treatment duties when she was working. However, when Defendant changed from eight-hour shifts to ten-hour shifts in September 2007, full-time nurses on duty began performing their own wound treatments, rather than having additional PRN staff on the schedule to perform those tasks. Therefore, Plaintiff – as PRN staff – was no longer required to perform those duties. Plaintiff further testified that at some point during January or February of 2008, Debra Mooneyham – a white, part-time LPN – called her to tell her that Dunn had assigned Mooneyham to perform wound treatments during a four-hour period in the mornings, rather than on a full shift.

It appears to the Court that Defendant's alleged denial of the "treatment nurse" position is better characterized as a failure to schedule Plaintiff for some work hours in January or February of 2008. There was no distinct "treatment nurse" position. Rather, PRN staff were scheduled to perform those duties as needed. The duties were eliminated at one point because they were not

12

needed. There were fewer wounds and longer shifts during which full-time staff could perform those tasks. At some point later, it apparently became necessary for PRN staff to perform wound treatments again. Defendant scheduled Mooneyham for those work hours rather than Plaintiff. In that respect, Plaintiff's "treatment nurse" allegation is nothing more than an allegation that Defendant did not schedule her for more work hours in early 2008. Therefore, the Court holds that it is not a distinct retaliation claim, but, rather, Plaintiff's allegation that Defendant failed to assign her to the treatment nurse duties in January or February of 2008 is merely part of Plaintiff's more general retaliation claim for the reduction of her work hours.

Accordingly, the Court grants Plaintiff's Motion for Reconsideration, insofar as Plaintiff requests the Court to reconsider its ruling that the denial of treatment nurse duties was not an adverse employment action. However, the Court also holds that the failure to assign Plaintiff to treatment nurse duties is not an adverse employment action separate from the general reduction of her hours. Rather, Defendant's alleged failure to assign Plaintiff to the treatment nurse duties is an *example* of Defendant's alleged failure to schedule Plaintiff for work hours. It does not, therefore, give rise to a separate Title VII cause of action.

### 3. *Termination/Constructive Discharge*

Plaintiff also urges that the Court reconsider its decision concerning her failure to plead any termination and/or constructive discharge claim. In the Court's original opinion, the Court noted that Plaintiff had asserted in her briefing that she was terminated and/or constructively discharged. McNairy, 2010 U.S. Dist. LEXIS at *20. The Court, in an effort to thoroughly address Plaintiff's arguments in response to Defendant's motion, held that Plaintiff was not permitted to rely on new claims for the first time in her response to Defendant's Motion for Summary Judgment. Id. at *20-

*21. Plaintiff argues that she could not have properly plead a retaliation claim premised upon termination or constructive discharge, insofar as Defendant did not formally remove her from its payroll and employment records until May 27, 2009. Therefore, Plaintiff contends that her submission of evidence that she was terminated operates as an amendment to the pleadings pursuant to Rule 15 of the Federal Rules of Civil Procedure.

Plaintiff's characterization of Rule 15 is inaccurate. Rule 15(a) governs amendments to the pleadings before trial. See FED. R. CIV. P. 15(a). Rule 15(a)(1) provides that a "party may amend its pleading once as a matter of course within" certain guidelines. FED. R. CIV. P. 15(a)(1). Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Plaintiff has not sought the Court's leave to amend her pleadings, and there is no written consent from Defendant in the record. Plaintiff's argument more closely resembles an argument under Rule 15(b)(2), which governs the amendment of pleadings for issues tried by consent. See FED. R. CIV. P. 15(b)(2). Rule 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

FED. R. CIV. P. 15(b)(2). This matter has not yet reached trial. Therefore, the provisions of Rule 15(b)(2) are inapplicable.

As the Court has already ruled, any claims premised upon Plaintiff's alleged termination and/or constructive discharge are not properly before the Court. See Jefferson v. Christus St. Joseph Hosp., 2010 U.S. App. LEXIS 5179, at *21 (5th Cir. Mar. 11, 2010) (where plaintiff failed to

14

reference claims in a third amended complaint, the facts in said complaint failed to describe such claims, and they were raised for the first time in an improperly filed sur-reply, they were not properly before the court); Cutrera v. Bd. of Supervisors, 429 F.3d 108, 113 (5th Cir. 2005) (where plaintiff raised a claim for the first time in a response to a motion for summary judgment, the district court properly ignored it). This ruling does not constitute a judgment in favor of Defendant as to any potential termination and/or constructive discharge claim brought by Plaintiff. No such claim is properly before the Court at this juncture.

C.  *Section 1981 Retaliation*

In the Court's original opinion, it granted summary judgment in favor of the Defendant as to Plaintiff's Section 1981 retaliation claims for the same reasons cited in the Court's analysis of Plaintiff's Title VII retaliation claims. Plaintiff now requests that the Court alter or amend that judgment for the same reasons stated above. However, the Court did not address another substantial reason to dismiss Plaintiff's Section 1981 claims. While Section 1981 prohibits racial discrimination in both public and private employment,[2] it "does not afford a remedy for violation of rights guaranteed thereunder when such claim is pursued against a governmental entity." Washington v. City of Gulfport, 351 F. App'x 916, 919 (5th Cir. 2009) (citing Oden v. Oktibbeha County, Miss., 246 F.3d 458, 463 (5th Cir. 2001)). Section 1981's "prohibitions against a private actor's racial discrimination are properly asserted against a state actor under 42 U.S.C. § 1983." King v. Louisiana, 294 F. App'x 77, 82 n. 4 (5th Cir. 2008); see also Myers v. La Porte Indep. Sch. Dist., 277 F. App'x 333, 335 (5th Cir. 2007).

Plaintiff's complaint contains no reference to 42 U.S.C. § 1983. "[R]equiring § 1981 claims

---

[2]Mitchell v. Crescent River Port Pilots Ass'n, 265 F. App'x 363, 368-69 (5th Cir. 2008).

15

to be pursued through § 1983 is not a mere pleading formality." Felton v. Polles, 315 F.3d 470, 482 (5th Cir. 2002). "The express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the *exclusive* federal damages remedy for the violation of the rights guaranteed by § 1981 *when the claim is pressed against a state actor*." Id. at 481. Therefore, as Plaintiff failed to invoke the only remedy available to her for the alleged deprivation of her Section 1981 rights by Defendant, she has failed to state a claim for which relief may be granted. Id. at 482; see also Oden, 246 F.3d at 463-64 (plaintiff could not maintain an independent cause of action under Section 1981 against the state). Therefore, the Court withdraws its opinion and order granting summary judgment in favor of Defendant as to Plaintiff's Section 1981 claims and dismisses Plaintiff's Section 1981 claims without prejudice.

## V. CONCLUSION

For the reasons cited above:

1) The Court grants Plaintiff's Motion for Reconsideration with respect to her Title VII retaliation claim for the reduction of her hours.

2) The Court also grants Plaintiff's Motion for Reconsideration with respect to its prior ruling that Defendant's failure to assign her to treatment nurse duties did not constitute an adverse employment action. However, the Court holds that Plaintiff's allegations concerning the treatment nurse position do not form the basis of a Title VII retaliation claim separate from her reduced hours claim.

3) The Court denies Plaintiff's Motion for Reconsideration with respect to any termination and/or constructive discharge claim she has attempted to raise at

the summary judgment stage of this matter.

4) The Court also denies Plaintiff's Motion for Reconsideration as to her Section 1981 retaliation claims. However, the Court withdraws the portions of its original opinion and order pertaining to Plaintiff's Section 1981 claims and dismisses Plaintiff's Section 1981 claims without prejudice.

An order consistent with this opinion will issue on this, the 22nd day of September, 2010.

                                      **/s/ Sharion Aycock**
                                      **UNITED STATES DISTRICT JUDGE**